## DEFENDANT'S VERIFIED RESPONSES TO PLAINTIFF'S INTERROGATORIES – SET ONE

Case: Collier Brown v. Mah Group, Inc. (d/b/a WOLFpak)

Case No.: 8:25-cv-00051-FWS-DFM

## INTERROGATORIES AND RESPONSES

### Interrogatory No. 1

Defendant objects that this interrogatory is vague, overly broad, and unduly burdensome as it seeks "each text message" regardless of subject or relevance. Subject to and without waiving objections: All messages to Plaintiff were sent via Yotpo Ltd., a third-party cloud platform used to send automated SMS marketing messages to subscribers who have provided express written consent. Yotpo's system transmits through approved SMS gateways and does not utilize any random or sequential number generator. Between September 27, 2024, and April 23, 2025, a limited number of marketing messages were sent to Plaintiff after he voluntarily subscribed.

### Interrogatory No. 2

Messages were sent through Yotpo's online dashboard. Once a user subscribes via the website form, Yotpo's system automatically records opt-in data (date, time, and IP stamp) and sends campaign messages from a pre-approved list. No WOLFpak employee manually sends text messages; Yotpo automates all message delivery within its compliant TCPA framework.

### Interrogatory No. 3

Objection — overbroad, seeks privileged work product. Subject to objections, persons with relevant knowledge include: Michael Henderson, CEO, regarding general marketing policies; and Yotpo Ltd. Legal and Compliance Department regarding system functionality and TCPA compliance.

### Interrogatory No. 4

Marketing message content was prepared internally by the WOLFpak marketing team for general brand promotions and uploaded to Yotpo's platform. No messages were directed personally to Plaintiff.

### Interrogatory No. 5

All transmissions were executed by Yotpo Ltd., using its compliant system on behalf of Defendant. No WOLFpak employee personally initiated or transmitted any messages.

### Interrogatory No. 6

Objection — overly broad and seeks proprietary vendor information. Subject to objections: Yotpo uses a secure, cloud-based system integrated with Shopify. It stores opt-in numbers within encrypted databases and sends texts via compliant SMS aggregator APIs. The system does not generate random numbers and therefore does not constitute an ATDS under Facebook v. Duguid (2021).

### Interrogatory No. 7

Objection — vague as to time and scope. Without waiving objections: Defendant is not aware of any formal or informal TCPA-related complaints concerning Yotpo campaigns prior to Plaintiff's claim.

### Interrogatory No. 8

Plaintiff voluntarily provided express written consent to receive SMS marketing messages on September 27, 2024, at 8:37 PM (New York time) via the subscription form on WOLFpak's website. The form clearly displayed compliant TCPA language: "By signing up via text, you agree to receive recurring automated marketing messages… Consent is not a condition of purchase. Reply STOP to unsubscribe." This opt-in record, form screenshot, and timestamp are verified by Yotpo's logs.

### Interrogatory No. 9

All subscribers to WOLFpak's SMS program provided affirmative electronic consent through the same Yotpo-powered form integrated with Shopify checkout or pop-up widget. Each subscription event is date-stamped, logged, and stored by Yotpo in compliance with the TCPA and E-SIGN Act.

### Interrogatory No. 10

Defendant does not make telephone solicitation calls; all marketing communications are SMS-based to consenting subscribers. Nevertheless, Yotpo's system automatically suppresses any numbers flagged for opt-out or on internal do-not-contact lists. WOLFpak honors all "STOP" requests immediately.

### Interrogatory No. 11

WOLFpak's SMS vendor, Yotpo, maintains opt-in verification records, timestamps, and consent logs. No text can be sent to a number unless consent is recorded in the database. WOLFpak reviews and verifies vendor compliance through contractual representations and periodic audits.

### Interrogatory No. 12

WOLFpak maintains an internal suppression list through Yotpo's "unsubscribe" functionality. Once a user replies "STOP," the number is automatically flagged and no further messages can be sent.

**Interrogatory No. 13**

Because WOLFpak does not make telephone solicitation calls and messages are sent only to subscribers who opt in, it is not required to scrub the National Do Not Call Registry. Yotpo's opt-in process ensures compliance by requiring explicit customer initiation of the subscription.

## SUMMARY DEFENSE POSITION

Mah Group, Inc. (d/b/a WOLFpak):
- Obtained express written consent from Plaintiff and all subscribers.
- Relied on Yotpo Ltd., a compliant third-party platform, which does not use an ATDS.
- Plaintiff remains subscribed and has not opted out.
- All communications were lawful, compliant, and executed in good faith.


Dated: October 17, 2025

Respectfully submitted,


CARTEE, LC
By: /s/ Anthony Cartee (SBN 248721)
333 City Blvd. W. 17Fl.
Orange, CA 92868
Phone: (714) 942-2225
Email: acartee@ac-legal.com

Attorneys for Defendant
MAH Group, Inc. d/b/a WOLFpak

## DEFENDANT'S VERIFIED RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS – SET ONE

Case: Collier Brown v. Mah Group, Inc. (d/b/a WOLFpak)

Case No.: 8:25-cv-00051-FWS-DFM

### RESPONSES TO REQUESTS FOR PRODUCTION

#### Request No. 1
Objection. This request is vague, overly broad, and seeks information not relevant to the claims or defenses. Without waiving objections, Defendant is not aware of any insurance policy applicable to the acts alleged in this matter. No insurer has accepted defense or indemnity coverage for the claims asserted.

#### Request No. 2
Objection. Overly broad and seeks disclosure of information protected by the attorney–client privilege and work product doctrine. Subject to and without waiving objections, individuals with general knowledge include Michael Henderson, CEO of Mah Group, Inc., and representatives from Yotpo Ltd., the third-party vendor responsible for message transmission and consent capture.

#### Request No. 3
Objection. Overbroad, unduly burdensome, and seeks irrelevant proprietary data. Subject to objections, responsive data relevant to this case is maintained by Yotpo Ltd., which securely stores opt-in consent logs and SMS message history through its cloud-based platform integrated with Shopify.

#### Request No. 4
Objection. Overbroad, seeks irrelevant internal communications unrelated to the allegations, and invades work-product protections. Defendant's relevant communications concerning SMS campaigns were limited to operational coordination with Yotpo Ltd. No internal messages were exchanged concerning Plaintiff prior to receipt of this lawsuit.

#### Request No. 5
Objection. Overbroad and unduly burdensome. Subject to and without waiving objections, Defendant will produce the Yotpo Services Agreement governing SMS marketing services, which confirms vendor responsibility for message delivery, opt-in records, and TCPA compliance. No other communications exist regarding Plaintiff prior to litigation.

**Request No. 6**

Defendant never purchased or rented any telephone numbers. All numbers used in SMS campaigns were voluntarily provided by subscribers via WOLFpak's website or checkout pages.

**Request No. 7**

Subject to objections, the only platform used was Yotpo Ltd., a third-party software provider. Yotpo's system does not use a random or sequential number generator and thus does not qualify as an ATDS under Facebook v. Duguid.

**Request No. 8**

Objection. These requests are premature, overbroad, and seek class discovery prior to certification. Defendant will not produce such data absent a court order. Subject to objections, only customers who affirmatively subscribed via Yotpo's compliant form received messages.

**Request No. 9**

Same objections and response as Request No. 8.

**Request No. 10**

Subject to objections, Defendant will produce Yotpo's opt-in record, form screenshot, and message log for Plaintiff showing voluntary subscription on September 27, 2024 and ongoing consent.

**Request No. 11**

Objection. Seeks privileged attorney–client and work-product materials. Subject to objections, the only non-privileged communications are with Yotpo Ltd. Legal regarding verification of consent data.

**Request No. 12**

Defendant objects as overly broad. Subject to objections, all telephone numbers were obtained directly from customers via the WOLFpak website or Shopify checkout, where subscribers affirmatively opted in to SMS marketing. No lists were purchased.

**Request No. 13**

Same objections and response as Request No. 12.

**Request No. 14**

Same objections and response as Request No. 12.

**Request No. 15**

Objection. Overly broad, unduly burdensome, and disproportionate to the needs of the case. Subject to and without waiving objections, Defendant will produce Yotpo's message log for Plaintiff showing all compliant transmissions following consent.

**Request No. 16**

Same objections and response as Request No. 15.

**Request No. 17**

Subject to objections, Defendant will produce its internal vendor compliance policy requiring all marketing partners to comply with TCPA and opt-out rules. Yotpo's internal suppression system automatically enforces all "STOP" requests. Defendant maintains no separate "Do Not Call List" because no telephone solicitations are made.

**Request No. 18**

Same objections and response as Request No. 17.

**Request No. 19**

Subject to objections, Defendant will produce the Yotpo opt-in record and subscription form screenshot showing the compliant disclosure text and timestamped consent for Plaintiff and class subscribers.

**Request No. 20**

Same objections and response as Request No. 19.

**Request No. 21**

Objection. Overbroad and vague as to "complaints." Without waiving objections, Defendant has no record of any formal or informal TCPA complaint regarding its SMS campaigns prior to Plaintiff's claim.

**Request No. 22**

Defendant objects that these requests are irrelevant because Defendant does not make telephone calls covered by the National Do Not Call Registry. All SMS messages are sent only to customers who provided written consent, verified through Yotpo's platform. "STOP" replies immediately prevent future messages.

**Request No. 23**

Same objections and response as Request No. 22.

**Request No. 24**

Same objections and response as Request No. 22.

**Request No. 25**

Subject to objections, Yotpo's system stores subscriber data securely in encrypted databases. All transmissions are conducted through Yotpo's controlled infrastructure. WOLFpak does not directly transmit or store message data.

**Request No. 26**

Same objections and response as Request No. 25.

**Request No. 27**

Same objections and response as Request No. 25.

**Request No. 28**

Subject to objections, the number of text messages sent to Plaintiff is limited to post-consent marketing communications recorded in Yotpo's logs. Messages were transmitted through Yotpo's automated, compliant process using pre-existing contact lists.

**Request No. 29**

Same objections and response as Request No. 28.

**Request No. 30**

Defendant will produce documentation showing Plaintiff's opt-in timestamp, form screenshot, and Yotpo Legal's confirmation letter verifying that consent was obtained in compliance with TCPA and the E-SIGN Act.

**Request No. 31**

Same objections and response as Request No. 30.

**Request No. 32**

Subject to objections, all text transmissions were executed by Yotpo's cloud infrastructure, not through WOLFpak devices. Plaintiff's last transaction occurred through the WOLFpak e-commerce store prior to receiving messages.

**Request No. 33**

Same objections and response as Request No. 32.

**Request No. 34**

Subject to objections, WOLFpak requires all marketing vendors to adhere to federal and state telemarketing laws. Defendant will produce its vendor compliance acknowledgment and Yotpo's TCPA compliance summary. No internal training manuals exist because message sending is fully automated through the vendor.

**Request No. 35**

Same objections and response as Request No. 34.

**Request No. 36**

Same objections and response as Request No. 34.

## SUMMARY DEFENSE POSITION

MAH Group, Inc. (d/b/a WOLFpak):
- Did not commit any wrongdoing and maintained full TCPA compliance.
- Relied in good faith on Yotpo Ltd., a compliant third-party platform that is not an ATDS.
- Obtained express written consent from Plaintiff and all subscribers.
- Plaintiff remains subscribed and has not opted out.
- All communications were lawful, transparent, and compliant with TCPA and E-SIGN

standards.

Dated: October 17, 2025

Respectfully submitted,

CARTEE, LC
By: /s/ Anthony Cartee (SBN 248721)
333 City Blvd. W. 17Fl.
Orange, CA 92868
Phone: (714) 942-2225
Email: acartee@ac-legal.com

Attorneys for Defendant
MAH Group, Inc. d/b/a WOLFpak



Andrew Perrong &lt;a@perronglaw.com&gt;

## Wilson v. MAH Group, Inc.
8 messages

**Anthony Paronich** &lt;anthony@paronichlaw.com&gt;     Tue, Dec 30, 2025 at 6:04 PM
To: michael@wolfpak.com, acartee@ac-legal.com, care@wolfpak.com, help@wolfpak.com
Cc: Andrew Perrong &lt;a@perronglaw.com&gt;

Messrs. Henderson and Cartee:

As you are both aware, the Court and none of the attorneys in this case have heard from Mr. Cartee for several weeks. Motions have been ignored as well as attempts to confer pursuant to Court Orders.

Mr. Harris, who has withdrawn because of the lack of communication, has provided us his most recent correspondence with Mr. Henderson. As a result, we are sending this e-mail.

Today is the deadline for the Plaintiff's expert report, it is attached. Furthermore, we have been attempting to confer on the Court's sanction Order. If Mr. Cartee is still representing MAH Group, Inc., can someone please confirm that for us and we will remove the company from future correspondence. However, before we file a motion for the sanctions that the Court invited, we wanted to attempt to reach someone who can represent the company's interests. Furthermore, before filing the motion that is due tomorrow, we are obligated under the Court's rules to confer with a local Oregon attorney, and we do not know from the company who that is since Mr. Harris has withdrawn and we have not heard from Mr. Cartee on who the new Oregon counsel is.

Please provide a response by 12:00 PST December 31, 2025. We will inform the Court of the response (or lack thereof) as appropriate.

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400

Hingham, MA 02043
[o] (617) 485-0018

[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**2 attachments**


**Expert Report of Aaron Woolfson -- 12.30.25.pdf**
316K


**Expert Report of Aaron Woolfson Exhibits.pdf**
2444K

---

**Michael** <michael@wolfpak.com>  Tue, Dec 30, 2025 at 6:23 PM
To: Anthony Paronich <anthony@paronichlaw.com>
Cc: acartee@ac-legal.com, Andrew Perrong <a@perronglaw.com>

Hello Anthony,

Here is my response.

Michael
[Quoted text hidden]

---

**3 attachments**


**WOLFpak_Discovery_Responses_Brown_Final (2).docx**
39K


**WOLFpak_RFP_Responses_Final (1).docx**
39K


**Mah_Group_Inc_ (1) (1) (1).pdf**
384K

---

**Anthony Paronich** <anthony@paronichlaw.com>  Tue, Dec 30, 2025 at 6:31 PM
To: Michael <michael@wolfpak.com>
Cc: acartee@ac-legal.com, Andrew Perrong <a@perronglaw.com>

Thanks, Mr. Henderson. However, as you will see in our filing, these do not comply with the Court's Order.

The more immediate issue though is that your company does not have the Oregon counsel required, and you did not respond on the whether or not the out of state counsel that had previously filed in appearance is still your company's attorney.

Please advise, as this impacts the relief we will seek from the court with respect to a potential default being entered against the company.

> On Dec 30, 2025, at 6:23 PM, Michael <michael@wolfpak.com> wrote:

[Quoted text hidden]

**3 attachments**

📄 **WOLFpak_Discovery_Responses_Brown_Final (2).docx**
39K

📄 **WOLFpak_RFP_Responses_Final (1).docx**
39K

📄 **Mah_Group_Inc_ (1) (1) (1).pdf**
384K

---

**Michael** <michael@wolfpak.com>  Tue, Dec 30, 2025 at 6:35 PM
To: Anthony Paronich <anthony@paronichlaw.com>
Cc: acartee@ac-legal.com, Andrew Perrong <a@perronglaw.com>

No default, you just brought this to my attention so an extension is needed.

I submitted this to my insurance company.

[Quoted text hidden]

---

**Anthony Paronich** <anthony@paronichlaw.com>  Wed, Dec 31, 2025 at 9:43 AM
To: Michael <michael@wolfpak.com>
Cc: acartee@ac-legal.com, Andrew Perrong <a@perronglaw.com>

Mr. Henderson:

Does Mr. Cartee represent your company any longer or not?

Both have implications for the filing today, but this is a basic question that we need to provide the Court an answer with.

Your comment that we "just brought this to [your] attention" is wrong on many levels. Your company has ignored Court Orders for weeks and discovery obligations for months. That's why the sanctions motion will be filed today.

[Quoted text hidden]

---

**Michael** <michael@wolfpak.com>  Wed, Dec 31, 2025 at 10:47 AM
To: Anthony Paronich <anthony@paronichlaw.com>
Cc: acartee@ac-legal.com, Andrew Perrong <a@perronglaw.com>

Anthony,

I want to be clear that MAH Group has every intention of fully complying with the Court's orders and continuing to defend this matter on the merits.

Our California counsel unexpectedly became unresponsive, and our Oregon local counsel withdrew without sufficient transition. This was not intentional on our part, and I was not made aware of the full scope of the issue until very recently.

We are actively retaining new Oregon counsel and expect to have local counsel identified immediately. We will request appropriate relief from the Court to allow substitute counsel to appear and address any outstanding issues.

We object to any characterization that MAH Group has acted in bad faith or ignored the Court, and we reserve all rights.

Michael Henderson
MAH Group, Inc.
[Quoted text hidden]

---

📄 **12.22.25 letter to MAH Group Inc.pdf**
366K

---

**Anthony Paronich** <anthony@paronichlaw.com>  Wed, Dec 31, 2025 at 1:09 PM
To: Michael <michael@wolfpak.com>
Cc: acartee@ac-legal.com, Andrew Perrong <a@perronglaw.com>

Mr. Henderson:

Thank you for your email confirming that your prior California counsel has been non-responsive and that your Oregon local counsel withdrew without a sufficient transition. I acknowledge your representation that MAH Group intends to comply with the Court's orders and that you are actively working to secure substitute Oregon counsel.

I am writing to update you on what has happened procedurally and what we have done today to address the situation.

As you should know, the Court issued an Opinion and Order on December 17, 2025 granting Plaintiff's Motion to Compel (ECF No. 17). That Order is attached. In that Order, the Court required MAH Group to provide complete discovery responses within thirty days (including all marketing text messages sent by YotPo or any other vendor), which makes the compliance deadline January 16, 2026. The Court also stated that Plaintiff must file any motion seeking attorney's fees and other sanctions within fourteen days of the Order, which made the sanctions motion deadline December 31, 2025.

Because your company has been without effective counsel and has represented that it is now retaining substitute Oregon counsel, we elected to take a step that provides your company an opportunity to secure counsel and comply with the Court's Order before we present the sanctions and fees issues to the Court. Specifically, rather than filing the sanctions motion today, we filed a motion asking the Court to continue the sanctions deadline until one week after the Court's compliance deadline. That requested new deadline is January 23, 2026.

This approach does not waive Plaintiff's rights or eliminate the sanctions issues. Instead, it allows the Court to evaluate any request for sanctions and fees with a complete record of whether MAH Group actually complies with the Court's Order by January 16, 2026. If MAH Group timely and fully complies, that will be relevant to what relief we ask the Court to impose. If MAH Group does not comply, Plaintiff will proceed with seeking the remedies the Court authorized and those available under the rules, including the sanctions the Court expressly invited Plaintiff to pursue.

Please ensure that substitute Oregon counsel is retained promptly and that MAH Group complies fully and on time with the discovery obligations set out in the Order. If you retain Oregon counsel in the next few days, please have that attorney file an appearance and contact us promptly so that we can confirm the compliance plan and avoid unnecessary motion practice.

[Quoted text hidden]

**2 attachments**


**17. Order on Motion to Compel.pdf**
172K


**19. Motion for Extension of Time.pdf**
167K

---

**Andrew Perrong** <a@perronglaw.com>  
To: Anthony Paronich <anthony@paronichlaw.com>  
Cc: Michael <michael@wolfpak.com>, acartee@ac-legal.com

Sat, Jan 3, 2026 at 4:54 PM

Counsel,

Please notice the attached subpoenas we are issuing. Based on Mr. Cartee's unresponsiveness (including the curious production of discovery documents allegedly signed by Mr. Cartee but served upon us by Mr. Henderson), we are also noticing Mr. Henderson.

[Quoted text hidden]

---

**2 attachments**


**Bandwidth Subpoena MAH.pdf**
685K


**Twilio Subpoena MAH.pdf**
821K