Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

|  |  |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of a class of all persons and entities similarly situated, <br><br>       Plaintiff <br><br> vs. <br><br> MAH GROUP, INC. <br><br>       Defendant. | Case No. 6:25-cv-00855-MTK <br><br> SECOND MOTION FOR ATTORNEY'S FEES AND OTHER SANCTIONS FOR CONTINUED FAILURE TO COMPLY WITH COURT ORDER TCPA (47 U.S.C. § 227) |

**PLAINTIFF'S SECOND MOTION FOR SANCTIONS FOR CONTINUED FAILURE TO COMPLY WITH COURT ORDER**

**MOTION**

Defendant MAH Group, Inc.'s pattern of discovery delay in this case is by now well-documented. This Court granted Plaintiff's Motion to Compel on December 17, 2025, overruling Defendant's objections and ordering complete production of, among other things, documents responsive to Request for Production 17. This motion addresses a separate but equally critical category of court-ordered discovery that Defendant has thus far completely refused to produce: classwide consent evidence responsive to that Request for Production, which sought "all evidence of written consent to make calls [identified in RFP 16], including any language that your company asserts complies with the E-Sign Act." The Court expressly overruled Defendant's objections to that request and ordered production within thirty days. (ECF No. 17). Over three months have elapsed. Defendant has produced nothing responsive to Request No. 17 with respect to the class, and only a single hearsay email regarding putative consent to contact the Plaintiff. Defendant has not produced a single document, screenshot, or database entry reflecting *any* putative class member's consent upon which it claims to have relied in placing millions of text message calls to Plaintiff and the putative class.

What makes this failure especially egregious is that Defendant has actively relied on consent as a defense throughout this litigation, including by devoting substantial portions of its opposition to the first sanctions motion to arguments about Plaintiff's purported consent and an email to the Court, which counsel will address in due course. Defendant cannot argue consent with one hand while withholding the consent evidence with the other. Rule 37 sanctions are warranted, and this Court should impose both compensatory fee-shifting and coercive daily sanctions until Defendant either fully complies or is barred from adducing any later-developed evidence of consent. Plaintiff now seeks continued sanctions for nonproduction.

Second Motion for Sanctions                    1

## PROCEDURAL HISTORY

The procedural history of this discovery dispute is by now extensive and does not bear recounting. With respect to the instant dispute regarding Request for Production 17, on March 17, 2026, the parties held a meet and confer specifically regarding the absence of any documents responsive to Request No. 17. During that conference, Defendant's counsel identified two categories, or types, of consent evidence on which Defendant intends to rely:

**Type 1:** Records from website popup submissions. According to Defendant, a popup ad *on Defendant's website* prompts customers to enter their phone numbers in exchange for coupons and special offers. Defendant contends that it does not maintain these records in its possession, care, custody, or control, and that they are instead maintained by its third-party vendor, Yotpo.

**Type 2:** Records related to customers who purchased products on Defendant's website. With respect to this category, Defendant has clarified that it does not intend to rely on these records as evidence of consent as it does not use them for its dialing campaign.

Defendant has produced neither type of putative consent record, although it has conceded that it will not rely on the Type 2 Records. But even so, no documents responsive to Request No. 17 have been produced at any point in this litigation, let alone on a class basis, and notwithstanding that this Court ordered their production more than three months ago.

## ARGUMENT

1. **Defendant's contention that the Type 1 Records are not within its possession, care, custody, or control, is not credible and contradicted by its own conduct.**

Defendant's principal excuse for its failure to produce the Type 1 consent documents is that they are maintained by Yotpo and are not within Defendant's possession, custody, or control. This argument is flatly contradicted by Defendant's own representations to this Court and its conduct in this litigation in producing the class *calling* records. As this Court is well aware, Defendant has been actively engaged in collecting and producing *calling* records from Yotpo, the *very same vendor*. Defense counsel represented as recently as February 12, 2026 that

Second Motion for Sanctions                    2

Defendant was "working with Yotpo to get [calling] records as soon as possible." Defendant has produced some, but not all, of these calling records with respect to the putative Class and has claimed to be in the process of collecting additional records.

If Defendant has the ability to obtain *calling* records from Yotpo, and actively represents to this Court that it is doing so, then it is simply not credible for Defendant to simultaneously claim that it cannot obtain the *consent* records that are associated with those *very same calls* from the very same entity from which it is collecting the calling records. Defendant claims that it relied on Yotpo to collect, record, and maintain evidence of putative consent. It cannot now attempt to rely on such putative consent by claiming that it doesn't have possession, care, custody, or control of the very documents it directed Yotpo to collect on its behalf. Both cannot simultaneously be true. If Defendant hired Yotpo to collect and maintain records of consent under the TCPA on its behalf, they clearly are within Defendant's control, but within the physical possession of a third party. If, on the other hand, Defendant disclaims a lack of possession, care, custody, and control of the consent records, it cannot claim that Yotpo was somehow collecting those records on its behalf sufficient to establish TCPA consent.

Relatedly, the calling records and the consent records are two sides of the same coin. The consent records are the predicate upon which the classwide calls were purportedly lawful. Put differently, either every outbound text message in Yotpo's system was placed pursuant to some claimed basis for consent or it was not. It is incumbent on Defendant, not Yotpo, to maintain those records. 16 C.F.R. § 310.5; *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 23 FCC Rcd 559, 565, ¶ 10 (2008) ("Should a question arise as to whether express consent was provided, the burden will be on [the caller] to show it obtained the necessary prior express consent."). The consent data either necessarily

Second Motion for Sanctions                    3

exists within Yotpo's systems, alongside the calling data, or otherwise neither Defendant nor Yotpo maintain legally sufficient evidence of consent. Defendant cannot plausibly maintain that it has access to millions of outbound call records from Yotpo, maintain a list of hundreds of thousands of telephone numbers that it continues to send text messages to, including Plaintiff during the pendency of this litigation, no less, yet lacks access to the consent documentation that purportedly authorized those very messages. In fact, given that it has demonstrated that it possesses the ability to obtain calling records from Yotpo, there is no reason why it would somehow not possess the ability to obtain consent records from Yotpo.

If anything, the consent records should be *easier* to obtain than the calling records themselves. As an initial matter, Defendant has represented that those records were obtained from a pop-up ad on the *Defendant's own website*. How those records are supposedly in the possession of Yotpo, and not the Defendant, strains credulity. But even if that proposition were accurate, the calling data in Yotpo's possession reflects the output of Defendant's telemarketing messages over the span of several months. The consent data, by contrast, reflects the input: the customer lists and information that Defendant provided to Yotpo, or that Defendant claims Yotpo collected on Defendant's behalf, to *initiate* each of the potentially hundreds of contacts via text messages over this timeframe. Defendant would have had to provide or facilitate the collection of consent data *before* any calls could be placed. The notion that this foundational data is somehow less accessible than the voluminous calling records strains credulity.

Nor does Defendant's contention that it does not have "control" over the Yotpo consent records have merit. Under Rule 34(a), a party may be required to produce documents, including electronically stored information (ESI), that are within its "possession, custody, or control." See Fed. R. Civ. P. 34(a)(1)(A). This standard does not require physical possession, but also includes

Second Motion for Sanctions                         4

the legal right to obtain the documents requested on demand. *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1987). Federal courts have consistently held that a party may be compelled to produce documents held by a third party when the party has the practical ability or legal authority to obtain them. *E.g.*, *FTC v. Am. Future Sys., Inc.*, No. 2:20-CV-02266-JHS, 2023 WL 3559899, at *2 (E.D. Pa. Mar. 28, 2023) (compelling production of data held by a third-party service, holding that "[i]mmediate accessibility in the ordinary course of business is not the test," and explaining that "the right, authority, or practical ability to obtain the documents from a non-party determines control"); *Am. Rock Salt Co. v. Norfolk S. Corp.*, 228 F.R.D. 426, 460 (W.D.N.Y. 2005) (defining control). This principle applies equally to ESI. *Columbia Pictures Indus. v. Bunnell*, 245 F.R.D. 443 (C.D. Cal. 2007) (compelling production of server log data stored by a third party and finding the ability to dictate its use and storage constituted control).

Accordingly, a party cannot shield discoverable information by outsourcing storage, maintenance, and collection operations to third-party vendors while maintaining the authority to access or direct the use of that data. Here, Defendant seeks to benefit from the use of data it claims is not within its "possession, custody, or control," that it is required to adduce in support of its claimed affirmative defense. It cannot simultaneously claim that the documents are not within its "possession, custody, or control," refuse to produce them, and then seek to benefit from the very same documents it refuses to produce. This objection borders on the frivolous because the Defendant has already demonstrated that it has an *ability to collect data from Yotpo* and has already partially produced telephone calling data.

Documents maintained by a party's agents or vendors are within that party's "control" for discovery purposes where the party has the legal right or practical ability to obtain them on demand. *United States v. Int'l Union of Petroleum and Indus. Workers, AFL–CIO*, 870 F.2d

Second Motion for Sanctions                        5

1450, 1452 (9th Cir. 1989). Defendant's demonstrated ability to retrieve the more voluminous *calling records* from Yotpo conclusively establishes that it has the practical ability, and therefore the legal obligation, to obtain less voluminous *consent* records from the same vendor. *Finmeccanica S.P.A. v. Gen. Motors Corp.*, No. CV078222SJOPJWX, 2008 WL 11338889, at *1 (C.D. Cal. May 30, 2008) (holding that a party has control over documents it has the practical ability to obtain from third parties with which it has a business relationship). Defendant's refusal to do so, more than three months after this Court ordered production, warrants sanctions.

### 2. Preclusion sanctions are appropriate.

In addition to the monetary sanctions outlined *infra*, Plaintiff requests preclusion sanctions barring Defendant from adducing any later-disclosed or later-discovered evidence of consent. That remedy is expressly authorized by Rules 37(b)(2)(A)(ii) and 37(c)(1). Where a party withholds information it was required to disclose and later attempts to use that information to support a claim or defense, exclusion is the default sanction unless the failure was substantially justified or harmless. *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 821 (9th Cir. 2019); *Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 739 (9th Cir. 2021) (affirming preclusion sanction for *five day* delay in disclosing expert); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008). And Rule 37 specifically permits the Court to prohibit a disobedient party from supporting designated defenses on which it bears the burden of proof with withheld evidence. *Project Sentinel v. Komar*, No. 19-CV-00708 DAD-EPG, 2020 WL 3802785, at *11 (E.D. Cal. July 7, 2020). Defendant should not be permitted to refuse and delay producing court-ordered consent discovery and then attempt to marshal that same evidence later in the case.

Preclusion sanctions are especially appropriate because, in a TCPA case, consent is an

Second Motion for Sanctions                    6

affirmative defense for which Defendant bears the burden. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). If any question arises as to prior express written consent, "the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012). As another Court held in a TCPA case when compelling similar information: "If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense." *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011). As such, Plaintiff has a legitimate need for this information and a reasonable expectation that it be produced.

By claiming that the Yotpo consent records are not within its possession, custody, or control, Defendant has effectively conceded that it does not maintain or cannot retrieve the records necessary to prove its own affirmative defense. Thus, Defendant cannot simultaneously insist that consent excuses its conduct while disclaiming possession, custody, or control over the Type 1 records that the TCPA requires it to maintain. And, as explained above, Defendant has conceded that it does not intend to rely on the Type 2 records for evidence of consent.

At this stage, the prejudice from a late disclosure of either type of consent data is concrete and palpable. At this point and at this stage in discovery and case development, even if Defendant timely produces some data, Plaintiff will be meaningfully hampered in his ability to evaluate whether the data itself complies with other of the TCPA's requirements for the collection of consent, including the Federal E-SIGN Act, among other requirements. And Plaintiff cannot prepare for class certification without understanding the scope and nature of Defendant's consent practices and potential presence of consent defenses and what evidence

exists across the class. Indeed, the Plaintiff has already incurred the expert cost associated with analyzing the limited data in this case without this production.

This Court and Plaintiff, in short, are operating in the dark as to whether or not the Defendant even possesses viable evidence of its chief affirmative defense, as well as its bellicose rhetoric and unprofessional conduct. If Defendant continues to withhold consent evidence while simultaneously asserting consent as a defense, the appropriate remedy is preclusion. Defendant should not be permitted to benefit from its own withholding of evidence by arguing consent at trial without having produced the evidence this Court ordered.

The only "consent" proof Defendant has surfaced to date confirms why preclusion is warranted. All Defendant has produced is an email from Yotpo claiming that the Plaintiff's consent originated from a specific IP address. As Plaintiff also explains, it is believed that the IP address information was obtained as a result of the Plaintiff clicking several of the links in the messages he received after the fact, not because he visited Defendant's or Yotpo's websites as claimed. This is particularly true as the other elements of the proposed Yotpo submission bear indicia of unreliability – an email address of "no@gmail.com," and a name of "Taken Rosins."

The Yotpo email asserting (without a date) an IP address is associated with supposed "consent" is not admissible proof of Plaintiff's written consent. It is, at most, hearsay layered atop unauthenticated third-party data that the Plaintiff has not been given the opportunity to review. On this point, *Hossfeld v. Allstate Ins. Co.* is directly instructive. There, the defendant's consent defense rested (unlike here) on a *produced* third-party spreadsheet and related assertions about its source and the purported website visits they were allegedly reflected to represent. 726 F. Supp. 3d 852, 872-73 (N.D. Ill. 2024). The court held that, without anyone to testify as to the authenticity of the spreadsheet, the spreadsheet was inadmissible hearsay insufficient to establish

Second Motion for Sanctions                    8

prior express written consent under the TCPA. *Id.* at 873-74. That was layered atop of hearsay within the spreadsheet itself, that is, hearsay as to whether the website visits contained within them even occurred at all. *Id.* And, without admissible evidence of written consent, the defendant could not carry its TCPA consent defense. *Id.*

Here, Defendant's position is worse. Anyone, including Yotpo, can simply obtain the Plaintiff's IP address from some other source and type up a hearsay email or spreadsheet claiming that it obtained consent from that IP address. That is not admissible evidence, such as computer-generated records of each submission. Defendant not only lacks admissible consent proof as to the entire class, but it affirmatively says the underlying Yotpo consent records are outside its possession, custody, or control. A defendant that does not maintain or cannot obtain the records necessary to prove consent cannot carry its burden, and it should not be allowed to cure that failure by producing later-disclosed consent evidence. Relatedly, Defendant has conceded that it is not relying on the Type 2 Data to bear its burden of proving consent.

Despite making consent arguments, and despite this Court's order compelling the production of all consent evidence, Defendant has produced none of it. This is not a case where Defendant has produced consent evidence that Plaintiff disputes. Defendant has produced no admissible consent evidence whatsoever. It is arguing a defense for which it has refused to produce the supporting documentation that this Court ordered it to produce more than three months ago. Accordingly, in addition to monetary sanctions, the Court should preclude Defendant from adducing any later-disclosed or later-discovered evidence of consent, including but not limited to Yotpo records in Type 1, or the website purchase records in Type 2.

### 3. Fee shifting and coercive sanctions are also warranted.

Plaintiff has already made the case for why, on this fact pattern, mandatory fee shifting

Second Motion for Sanctions                    9

and continued coercive sanctions are warranted, including Defendant's pattern of noncompliance with its discovery obligations in other litigation. Plaintiff will not repeat those arguments here. However, it bears noting that, since the Plaintiff's original sanctions motion, the Defendant has not produced a *single additional page* of documents compelled, apart from two pages of screenshots produced yesterday. The threat of sanctions in this Court's December 17, 2025 Order did not produce compliance. The filing of Plaintiff's first sanctions motion did not produce compliance. A sanctions award in another court did not change Defendant's behavior. Defendant has demonstrated, through conduct spanning multiple jurisdictions, that it simply will not comply with its discovery obligations unless compelled by escalating, concrete consequences.

To the extent Defendant again attempts to shift blame to prior counsel, that argument now has lost any merit or appeal it once had. This Court has already heard those arguments, and they do not excuse continued nonproduction months after new counsel appeared. Defendant's new counsel has been in this case since January 2026. It is now the end of March. At no point during those nearly three months has Defendant produced a single document responsive to Request No. 17, nor produced any additional Yotpo or other calling records after the Plaintiff filed his first sanctions motion. As such, this Court should sanction the Defendant $4,122.50 dollars for the preparation of *this* motion, as well as impose coercive daily sanctions of $300 per day, until Defendant fully produces all documents responsive to Request No. 17. In the alternative, this Court should allow Defendant to discharge these coercive daily sanctions by making any claimed consent defense unavailable to it and precluding the same.

## CONCLUSION

For these reasons, the Court should grant the motion and issue the requested preclusion sanctions and monetary sanctions of $300 per day plus an additional $4,122.50 for this Motion.

Second Motion for Sanctions                    10

RESPECTFULLY SUBMITTED AND DATED this March 31, 2026.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

## LR 7-1 CERTIFICATION

On March 31, 2026, Plaintiff's counsel Andrew Perrong conferred with Defendant's counsel, Neal Shechter via Microsoft Teams, at which Christin Grieser was also present. When Mr. Perrong explained the instant position that the Yotpo data is within Defendant's possession, care, custody, and control within the meaning of Rule 34(a)(1) and should be produced responsive to Request 17 because Defendant was able to obtain calling records from Yotpo, Mr. Shechter called this position "the stupidest f****** thing I've ever heard" and called the Plaintiff's motion "ridiculous" for taking this position. During the call, Mr. Shechter persisted in his use of profanity, including stating, "you're fucked."

Dated: March 31, 2026

> /s/ Andrew Roman Perrong
> Andrew Roman Perrong

Second Motion for Sanctions                11

**CERTIFICATE OF PAGE COUNT**

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains exactly 10 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: March 31, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: March 31, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

Second Motion for Sanctions                12