Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

CHET MICHAEL WILSON, individually and
on behalf of a class of all persons and entities
similarly situated,

        Plaintiff

vs.

MAH GROUP, INC.

        Defendant.

Case No. 6:25-cv-00855-MTK

[PROPOSED] REPLY IN SUPPORT OF
SECOND MOTION FOR SANCTIONS
TCPA (47 U.S.C. § 227)

## [PROPOSED] REPLY IN SUPPORT OF
## SECOND MOTION FOR SANCTIONS

### INTRODUCTION

Yotpo's contracts with Defendant give Defendant a legal right to demand production of the very records this Court ordered produced more than four months ago. That right is articulated in the publicly available Yotpo Terms of Service ("TOS") and the Data Processing Addendum ("DPA"), attached herein as Exhibits 1 and 2, which are explicitly incorporated by reference in Defendant's contract with Yotpo and in each other. That right has been enforced in practice, not merely in theory. In accordance with Defendant's contracts with Yotpo, Defendant has obtained calling records on demand throughout this litigation and obtained a declaration from Yotpo's

1

[Proposed] Reply

counsel. That exercised contractual right, on its own, satisfies even the most exacting reading of the Ninth Circuit's control test in *In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999). The Opposition does not engage with the contracts. It instead accuses Plaintiff of misrepresenting precedent, of citations riddled with mistakes, and failing to meet and confer. On examination, this rhetoric neither rebuts the merits nor accurately characterizes the cases Plaintiff cites.

ARGUMENT

## I. The Yotpo Contract Establishes Legal Control Even Under the Narrowest Reading of *Citric Acid*.

The Opposition stakes its legal position on a single proposition, that *Citric Acid* limits "control" under Rule 34 to a "legal right to obtain documents upon demand," 191 F.3d at 1107 (citing *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989)), and that no other showing suffices. Even granting Defendant that strict reading, and bracketing the practical ability discussions in *Columbia Pictures*, *Finmeccanica*, and other authorities Plaintiff cited, Plaintiff prevails. The TOS and DPA give Defendant exactly the legal right *Citric Acid* describes.

First, the DPA gives Defendant a contractual right to demand the consent records. Section 8 of the DPA provides that, "[f]ollowing termination of the Agreement and subject thereto, Processor shall, at the choice of Client (indicated through the Service or in written notification to Processor), delete or return to Client all the Personal Data it Processes solely on behalf of the Client." DPA § 8. That is the definition of a legal right to obtain documents on demand. Yotpo's refusal to comply would breach the contract. *Citric Acid* identified that distinction between voluntary cooperation and contractual obligation as the entire fulcrum on which control turns. In *Citric Acid*, a Swiss firm could "legally—and without breaching any contract—continue to refuse to turn over such documents." *Id.* at 1108.

2

[Proposed] Reply

Yotpo cannot. The DPA's ancillary provisions, as well as the parties' pattern and practice, reinforce that right. Section 2.1 designates Defendant the "Controller" of all Personal Data and Yotpo the "Processor." Section 2.3 obligates Yotpo to process Personal Data only "to comply with Client's reasonable and documented instructions." The Opposition does not address the DPA or the demonstrated compliance with the DPA in (partially) obtaining the class calling data in this litigation. The DPA demonstrates legal control.

And the TOS confirm that the underlying records, including the consent records here, are Defendant's property. The TOS states that, "between the parties, Client retains all intellectual property and other rights in its intellectual property and to the Client Content provided to Yotpo to provide the Products and Services." TOS § 2(a). Defendant also represented to Yotpo that it obtained all the necessary consent for Yotpo to conduct its work. *Id.* § 5(f), (i). Yotpo's rights are limited to the narrow license "necessary to operate and provide" the Services. *Id.* § 3(b). The TOS makes clear that Defendant is the owner of its data and Yotpo is the custodian.

Nor need this Court rely only on what the contract actually said. Defendant has exercised that right in practice by obtaining Yotpo calling data and a Declaration during this litigation. The standard for control is "actual" control as opposed to "an esoteric concept such as 'inherent relationship.'" *Int'l Union*, 870 F.2d at 1454. But just because the standard is not an "inherent relationship" does not mean that a court is forbidden from considering the relationship between the parties to determine whether or not control existed. Plaintiff cited the record here to establish that the contractual right (which is quintessentially a legal right) has been *actually enforced in practice* in this *very case*. The Birch Declaration and production of the *calling* data are evidence of this. That is *not* theoretical control. It is proof of precisely the kind of actual, enforceable legal right that Defendant contends *Citric Acid* and *Int'l Union* require.

[Proposed] Reply

Defendant's argument that its commercial relationship with Yotpo terminated in August 2025 does not change the analysis. The express terms of the contract state that, when the parties' relationship terminates, the data will either be destroyed or returned. The production of calling records from Yotpo confirms that the data was not destroyed and has remained in Yotpo's possession and subject to Defendant's control. The Birch Declaration itself confirms that Yotpo maintains the consent data and maintains the ability to access it. Yotpo's continued performance and return of the calling data after the alleged termination confirms it continues to retain Defendant's data, including any putative consent data. Nothing in the record explains why consent records are the one category of records held by Yotpo outside the contract's reach.

## II. Defendant's Case Law Attacks Do Not Withstand Scrutiny.

The Opposition also charges Plaintiff with (allegedly) citing cases for propositions they do not stand for. The accusations are misplaced. The cases stand for precisely the rule the Motion ascribed to them. Defendant's cases do not change that analysis.

Start with *American Rock Salt*. Plaintiff cited that case once, with the parenthetical "(defining control)." The case does define control. The only "error" Defendant identifies is a typo in the year (2005/2004). The parenthetical was accurate to the cited proposition, as the pincite does define control. Defendant's real gripe with *American Rock Salt* seems to be that it defines control more broadly than *Citric Acid* and *Int'l Union*, but that's just a difference in a characterization of the legal standard, not a misrepresentation of authority.

Defendant's treatment of *Finmeccanica* is the most striking inversion of the record. Defendant quotes a sentence describing why one plaintiff, ARI, could not be compelled to produce records held by a subsidiary company for the contention that Defendant should not be sanctioned for failing to produce its own data held by Yotpo because Yotpo isn't a subsidiary of the Defendant. *Finmeccanica S.P.A. v. Gen. Motors Corp.*, No. CV078222SJOPJWX, 2008 WL

4

[Proposed] Reply

11338889, at *1 (C.D. Cal. May 30, 2008). But the actual holding in *Finmeccanica* ordered the *other* plaintiff, Finmeccanica, to *produce* documents held by as many as 333 nonparty subsidiaries, including subsidiaries Finmeccanica had no authority under Italian law to compel, on the express ground that "control means right, authority, or 'practical ability' to obtain documents from non-party" *Id.* at *2 (quoting *Synopsys, Inc. v. Ricoh Co., Ltd.*, 2006 WL 1867529, at *2 (N.D. Cal. 2006)). That is precisely the proposition Plaintiff cited the case for. Defendant's footnote calling the motion "rushed" and "sloppy" is itself a striking example of the rhetorical excess the Opposition substitutes for legal analysis.

Next, consider *Am. Future Systems*. Defendant labels this decision an unreported Pennsylvania Special Master's recommendation whose reasoning was not adopted by the presiding judge. That characterization is misleading. The Report and Recommendation *was* adopted by the District Court subject to immaterial modifications, including reviews for "privilege and relevance." *FTC v. Am. Future Sys., Inc.*, No. 2:20-CV-02266, 2023 WL 3559319, at *1 (E.D. Pa. May 17, 2023). Defendant identifies no material misstatement of this case's holding. The actual disagreement is whether *Am. Future Systems* is persuasive, which is a merits dispute, not evidence of bad faith.

*Columbia Pictures* is cited because it rejects the notion that physical custody by a third-party technology provider ends the Rule 34 inquiry where the party retains some dominion over the data. The magistrate judge's finding, affirmed by the district court, was that "data in issue which is currently routed to a third party entity under contract to defendants and received in said entity's RAM ... is within defendants' possession, custody or control by virtue of defendants' ability to manipulate at will how the data in issue is routed." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 453 (C.D. Cal. 2007). Defendant's effort to limit *Columbia Pictures* to its

5

[Proposed] Reply

specific facts ignores the principle that contractual and operational dominion over data in the physical custody of a third party establishes control under Rule 34, precisely as here.

Finally, both *Citric Acid* and *Int'l Union* support, not refute, Plaintiff. Both denied motions to compel because there was no contract giving the producing party the right to obtain the records. *Int'l Union*, 870 F.2d at 1453; *In re Citric Acid Litig.*, 191 F.3d at 1108. Here, there is exactly such a contract, set out in detail above. Defendant's repeated invocation of these cases is, in substance, an acknowledgment of the very rule under which Plaintiff prevails.

### III. The LR 7-1 Record Refutes Defendant's Charges of Filing a "False" Rule 7-1 Certification.

The Opposition repeatedly accuses Plaintiff of filing a "false" LR 7-1 certification. The accusation cannot be squared with Defendant's own exhibit or the email thread attached to this Reply as Exhibit 3. On March 28, 2026, three days before the Motion was filed, Plaintiff wrote: "We have not yet received any of the consent data. As such, we intend to file a second motion for sanctions with respect to the deficiencies in RFP 17. Although we contend that we have discharged our obligation under Local Rule 7-1, I am available on Monday to discuss if you feel that our prior conversation was inadequate." And, after some interim conversations, Plaintiff further stated, "Thanks, upon review, we still intend to move as to the Yotpo data, as the metadata and underlying website submissions for each of the class members, including Plaintiff, were not produced. Let me know what time you are free to finalize our meet and confer today." Plaintiff further clarified that very issue in advance of the meet and confer call, in which Attorney Shechter gratuitously used profanity, that "it is our contention that the consent information is within Defendant's possession, care, custody, and control, within the meaning of the Rule." Plaintiff identified the specific category of records at issue, conferred further, and was met with profanity, which Defendant does not deny. The certification was accurate.

[Proposed] Reply

**IV. The Subpoena Argument Is a Red Herring.**

Defendant suggests the Plaintiff's failure to subpoena Yotpo demonstrates that the instant motion is allegedly vexatious. The premise is incorrect. Plaintiff has not subpoenaed Yotpo because Defendant has legal control over its own records in Yotpo's physical possession and was already ordered to produce them more than four months ago. The selective compliance here establishes willful disobedience of a Court's discovery order for sanctions purposes. The proper response to a production order is *production*. Besides, when documents are within a party's Rule 34 control, a Rule 45 subpoena is not the appropriate vehicle. Forcing a plaintiff to subpoena a third party for the very records Defendant was ordered to produce would invert the burden of compliance and reward delay. It also demonstrates why sanctions are appropriate here.

**CONCLUSION**

For the reasons stated in the Motion and this Reply, Plaintiff respectfully requests that the Court grant the Second Motion for Sanctions in its entirety. In a show of good faith, Plaintiff expressly waives any right to seek fees for preparing this Reply or the associated Motion for Leave to file a Reply.

RESPECTFULLY SUBMITTED AND DATED this April 28, 2026.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

7

[Proposed] Reply

**CERTIFICATE OF PAGE COUNT**

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains exactly 7 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: April 28, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: April 28, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq

[Proposed] Reply